## UNITED STATES v. SLAYMAKER.

### APPEAL FROM THE COURT OF CLAIMS.

No. 87.   Argued October 18, 1923.—Decided November 12, 1923.

The provision of the Act of August 29, 1916, that when any member
of the Naval Reserve Force severs his connection with "the
service," without compulsion on part of the Government, before
the expiration of his term of enrollment, the amount credited to
him as a "gratuity" for the purchase of a uniform shall be
deducted from any money that may be, or may become, due him,—
was not intended to apply where an officer of that force left it
through being commissioned as an officer of the regular Navy.
P. 9b.

57 Ct. Clms. 294, affirmed.

APPEAL by the United States from a judgment of the
Court of Claims awarding recovery of an amount de-
ducted from the pay of a naval officer.

*Mr. Assistant Attorney General Lovett,* with whom
*Mr. Solicitor General Beck* and *Mr. J. A. Fowler,* Special
Assistant to the Attorney General, were on the brief, for
the United States.

*Mr. George A. King,* with whom *Mr. William B. King*
and *Mr. George R. Shields* were on the brief, for appellee.

MR. JUSTICE MCKENNA delivered the opinion of the
Court.

Slaymaker, upon his enrollment during the War with
Germany, as an officer of the Naval Reserve Force, was
paid the sum of $150, as a gratuity for the purchase of a
uniform. He was subsequently commissioned as an
officer of the regular Navy and that sum was checked
against his account and deducted from his pay as such
officer. This action is brought to recover that amount.

The Court of Claims gave judgment for Slaymaker,
following the ruling, it said, of *Price* v. *United States,* 55

Ct. Clms. 499.   To review and reverse its action the Government (there is convenience in so designating the United States) prosecutes this appeal.

The difference between it and the court, and the latter's decision, turns upon an act of Congress passed August 29, 1916, 39 Stat. 589.   The act provides that " Members of the Naval Reserve Force shall, upon first reporting for active service for training during each period of enrollment, be credited with a uniform gratuity of $50 for officers and $30 for men.

" Upon reporting for active service in time of war or national emergency the uniform gratuity shall be $150 for officers and $60 for men . . . *Provided,* That should any member of the Naval Reserve Force sever his connection with the service without compulsion on part of the Government before the expiration of his term of enrollment, the amount so credited shall be deducted from any money that may be or may become due him."

We are confronted at the outset with the word " service " and its definition, in the provision "should any member of the Naval Reserve Force sever his connection with the *service.*" (Italics ours.)   The word " service " is an ambiguous one.   It has many senses.   In the first paragraph of the act of Congress it has a limited and immediately understood meaning.   It has manifestly a larger meaning in the second paragraph, but how much larger is open to dispute—is disputed in this case.   Does it mean the Naval Service in the most comprehensive sense of that designation, or the branches or departments of that service, or more narrowly, the functions in those branches or departments?   We are inclined to pronounce for the most comprehensive sense, though we feel the strength of the considerations which urge against it.

The allowance is called a " gratuity ", but it has useful design.   It is intended to attract ability to the work and purposes of the Government.   It is a reward and accorded

necessarily at the enrollment of the ability which continued in utility upon whatever objects or for whatever purposes exerted. It grew the greater as it was exercised in experience, and we cannot ascribe to Congress the intention to visit with the same consequence—penalty, we may say—a continuation of service having such result as a cessation of service. There was prompting and inducement to the reverse—prompting and inducement to the policy and practice of giving assurance to officers and men that the promotions they deserved and received would not be regarded as of no benefit to the Government—no more benefit than though they—officers and men—were disconnected from Government.

The Government contests this construction and the judgment of the Court of Claims. Its contention is that Slaymaker's resignation from the Naval Reserve Force was a severance of his connection "with the service" within the meaning of the Act of August 29, 1916, *supra,* and that it was "without compulsion on part of the Government", it being not only voluntary but under the admonition that the gratuity that had been granted him would have to be refunded, since he was "leaving the Reserve Force of his own volition and not by compulsion on the part of the Navy Department".

If the contention were relevant under our construction of the act we should be reluctant to hold that his action was voluntary and incurred the return of the gratuity.

July 1, 1918 (40 Stat. 711) Congress passed an act containing the following provision: "That no part of the clothing gratuity credited to members of the Naval Reserve Force shall be deducted from their accounts where said members accept or have accepted temporary appointments in the Navy in time of war or other national emergency."

This act was passed after the deduction from Slaymaker's pay. The Court of Claims considered the act as

a declaration of the meaning of the Act of August 29, 1916. The court strongly supports its holding. We, however, may rest our decision on the meaning we have assigned to the Act of August 29, 1916.

*Judgment affirmed.*