(No. 21527.—

THE PEOPLE *ex rel.* Frank J. McGee, Relator, *vs.* HENRY C. HILL, Warden, Respondent.

*Opinion filed October 22, 1932.*

BENJAMIN C. BACHRACH, for relator.

OSCAR E. CARLSTROM, Attorney General, J. J. NEIGER, JOHN P. MADDEN, and MERRILL F. WEHMHOFF, for respondent.

Mr. JUSTICE ORR delivered the opinion of the court:

A writ of *habeas corpus* was issued out of the last June term of this court, pursuant to an original petition then filed, against Henry C. Hill, warden of the Illinois State

Penitentiary, to inquire into the cause of the alleged illegal detention of Frank J. McGee, the relator. The writ was served and due return thereon made by the respondent.

The pertinent facts are as follows: Frank J. McGee was convicted and sentenced March 15, 1926, by the circuit court of McHenry county, to serve an indeterminate sentence of from one to twenty years in the penitentiary for the crime of burglary of a railway freight car and to serve an indeterminate sentence of from one to five years for the crime of setting prisoners at liberty, the two sentences running concurrently. He was received and began to serve his sentences on March 17, 1926. He served the required time for the crime of setting prisoners at liberty, and after having served about four years of the sentence for burglary he was paroled on March 1, 1930, by the division of pardons and paroles of the Department of Public Welfare, as the Illinois Board of Pardons and Paroles was then known and designated by law. The parole agreement signed by the prisoner at the time of his release provided for his parole to sponsor, Fr. Generose Stronk, of Louisville, Kentucky. During the month of April, 1930, word was received that the prisoner had violated his parole by leaving the State of Kentucky and by being arrested on a criminal charge in the State of Virginia. A parole violator's warrant was issued on May 2, 1930, by warden Hill and placed in the hands of the police officers for the arrest and return of McGee to the penitentiary. Under this warrant McGee was arrested and returned to the penitentiary on July 11, 1930. The parole board, after giving the prisoner a hearing according to law, on October 16, 1930, declared him to be a parole violator, and determined by its order that he should serve his full sentence and not be released from the penitentiary until July, 1938.

In behalf of the relator it is chiefly alleged that he is illegally restrained of his liberty by the action of the Board of Pardons and Paroles because (a) he did not violate any

rule or condition of his parole; (*b*) no one had any right to return him to prison; and (*c*) the Board of Pardons and Paroles had no legal authority or right to revoke his parole without legal evidence that there had, in fact, been a parole violation.

The record shows that previous to McGee's double conviction in 1926 he had served a term in the Illinois State Reformatory at Pontiac and a short term in the House of Correction in Chicago. Soon after his parole to Father Stronk, in Kentucky, the latter sent word that McGee had left Louisville in a rented car and was in jail at Martinsville, Virginia, having been arrested on April 8, 1930, at Pulaski, Virginia. Shortly prior to his arrest a railway boxcar loaded with Camel cigarettes had been broken into, and the officers of the railway company had sent out notices to surrounding towns to arrest any suspicious-looking persons who were carrying quantities of Camel cigarettes. When arrested McGee was driving an automobile containing a large number of this brand of cigarettes, some of which he had sold at filling stations along the road. The only charge then placed against McGee by the Virginia authorities causing his arrest was that of selling cigarettes without a license. Upon receiving word of McGee's arrest in Virginia after his alleged parole violation, the State's attorney of McHenry county on June 12, 1930, moved the circuit court of that county to re-instate indictment No. 22146, which had been returned into open court at its September term, 1925, being an indictment against McGee for burglary of another freight car in 1925, on which charge he was not then tried. This indictment had been stricken by the court with leave to re-instate and was by order of the court re-instated on June 12, 1930. Pursuant to such re-instatement of the charge against him, a petition for requisition of extradition papers to return McGee from Virginia was made to the Governor of Illinois by the State's attorney of McHenry county. The requisition was ordered to issue, and

as a result thereof the prisoner was returned to Illinois to answer the charge under the re-instated indictment. After the prisoner's return to Illinois, the State's attorney of Mc-Henry county, being advised that a warrant had been issued by the warden of the Illinois State Penitentiary for the arrest of McGee as a parole violator, turned the prisoner over to the Department of Public Welfare through its agent and he was then returned to the penitentiary as a parole violator.

We cannot agree with the relator's contention that he did not violate any rule or condition of his parole and was returned without just cause. When McGee left the State of Kentucky without permission and went to the State of Virginia he violated the third provision of his parole agreement, providing that he must not change employment nor leave employment unless by order of or upon permission from the warden first obtained in writing. When McGee was arrested for a crime in Virginia he violated the sixth provision of his parole agreement, to the effect that he must respect and obey the laws and conduct himself in all respects as a good citizen. All prisoners temporarily released upon parole are "considered as remaining under conviction for the crime or offense of which they were convicted" and shall be "subject to be taken at any time within the enclosure of such penitentiary." (Smith's Stat. 1931, chap. 38, sec. 7, par. 807.) Section 7a of this same act provides that in case any paroled prisoner violates his parole agreement, such prisoner shall "from the date of such violation be deemed to owe the State of Illinois service for the remainder of his or her maximum sentence, and should such prisoner or ward so violating said parole again at any time return to the State of Illinois, he or she shall be subject to be again arrested or apprehended on the writ or order of the warden, superintendent or managing head of the penitentiary." From a consideration of the facts in this case, together with the authority conferred by the sections of the

statute referred to, it is clear that the warden did not exceed his authority in issuing the writ for the return of McGee to the penitentiary as a parole violator.

It is claimed, however, that since McGee was only arrested in Virginia for selling cigarettes without a license, (a non-extraditable offense,) he was illegally brought back to Illinois, and that no one had any right to return him to prison. There was nothing unusual or unlawful in the reinstatement of the former indictment against McGee nor in his extradition from another State on that charge and no irregularities have been called to our attention. When he was brought back to this State it was entirely discretionary with the McHenry county officials whether they would prosecute him or turn him over to the prison authorities on the warrant then outstanding against him as a parole violator. No right of the prisoner was violated by their choice of the latter course. It is not claimed that the extradition proceedings were illegal in any respect, but even if they had been it would afford no relief in the present case. The law seems well settled that where a person charged with a crime in this State has been arrested in a sister State and brought here for trial on a requisition of the Governor of this State, our courts, on the trial of such person, will not inquire into the regularity of his arrest and surrender in such sister State. (*Ker* v. *People,* 110 Ill. 627.) After rendition to a demanding State under an extradition proceeding the prisoner may not be discharged on *habeas corpus* upon the ground that he was illegally surrendered upon invalid extradition proceedings. *Pettibone* v. *Nichols,* 207 U. S. 192.

We have carefully examined the action of the Board of Pardons and Paroles and have reviewed the evidence heard before its sub-committee, and from this review we believe there was ample justification for its finding that McGee had violated his parole. Two hearings were held for McGee, one on September 8, 1930, and the other on

October 1, 1930, and he was present and testified on both occasions. At the first hearing he said he had secured the cigarettes from a man named Ralph Palmer, who in turn had bought them at manufacturer's price direct from the Reynolds factory at Winston-Salem. He also said that upon his arrest he was fined $25 and costs, which he paid, for selling cigarettes without a license. He admitted "I didn't pay anything for the cigarettes—that is the best part." The members of the board, "to make sure no injustice is done this man," recommended a continuance of McGee's case until the October meeting in order to inquire into the truth of his story. They found that McGee had not been fined in Virginia, nor was he ever tried there on any charge prior to being turned over on the requisition to the Illinois authorities; also that the Reynolds Tobacco Company denied any information or knowledge whatever of Ralph Palmer or of having sold him any cigarettes. On reports received from various sources, and from the character of testimony offered by McGee in person, the board was fully warranted in declaring him a parole violator. Where the law has vested a quasi-judicial power even in subordinate administrative officers, the court will only inquire whether such officers have acted within their power and will not attempt to substitute its own judgment or discretion for that of the officer. (*Wilcox* v. *People,* 90 Ill. 186.) The action of the Board of Pardons and Paroles was well within the power given it by statutory provisions.

The office of the writ of *habeas corpus* is to obtain the release of persons illegally restrained of their liberty, but it is only authorized where the proceeding or judgment is absolutely void or the detention has become illegal by reason of some act, omission or event which has subsequently taken place, as provided in section 22 of the Habeas Corpus act. (*People* v. *Winders,* 283 Ill. 251.) The return before us shows that the relator is held in the penitentiary under the *mittimus* issued by the court which convicted him, and

we find no subsequent illegal act, omission or event which requires his release or makes illegal his further detention. He is therefore remanded to the custody of the warden of the Illinois State Penitentiary. *Relator remanded.*