(No. 26027.—)
THE PEOPLE *ex rel.* James E. Day, Petitioner, *vs.* O. H. LEWIS, Warden, Respondent.

*Opinion filed April 10, 1941.*

JAY J. McCARTHY, for petitioner.

JOHN E. CASSIDY, Attorney General, for respondent.

Mr. JUSTICE WILSON delivered the opinion of the court:

James E. Day, by an original petition for a writ of *habeas corpus* filed in this court against O. H. Lewis, warden of the Pontiac division of the Illinois State Penitentiary, seeks to obtain his discharge from the penitentiary. The writ issued and the respondent made a return, followed by a motion to quash the writ and dismiss the petition. The relator filed an answer and traverse and, subsequently, without prejudice thereto, a motion to strike the return. The cause is submitted upon the record so made.

February 19, 1932, the relator, then nineteen years of age, entered the Illinois State Reformatory at Pontiac under an indeterminate sentence of one to ten years, imposed in the criminal court of Cook county upon his plea of guilty to a charge of larceny. The petition alleges that on August 16, 1934, relator was transferred to the Stateville branch of the penitentiary, at Joliet; that on January 28, 1936, Richard Loeb, a fellow prisoner, armed with a razor, attempted to compel his submission to immoral advances of a perverted nature, which relator forcibly resisted; that a fight ensued and, in self defense, relator obtained the razor and cut Loeb, who subsequently died. Thereafter, the relator was indicted for the murder of Loeb, and, on June 4, 1936, following his trial, a jury in

the circuit court of Will county returned a verdict of not guilty. June 5 and 6, 1936, Joseph E. Ragen, warden of the penitentiary at Joliet, in letters to the director of the Department of Public Welfare, recommended the forfeiture of all of relator's statutory good time and his punishment for the violation of the prison rules resulting in the inmate's death. The director, on July 21, 1936, approved the warden's recommendation and forfeited the relator's earned time. The relator's sentence, which would have expired May 19, 1938, if credited with the time allowable for good behavior, will now terminate February 19, 1942, upon the completion of his full term. The petition further charges, as demonstrating that the forfeiture was instigated by malice rather than a lawful exercise of discretion, that immediately following his acquittal, and at other times, relator was placed in solitary confinement on a diet of bread and water and demoted to the lowest standing under the progressive merit system. In addition, it is stated, that relator was transferred, without an examination or hearing to determine his sanity, to the psychiatric division of the penitentiary, at Menard, on December 7, 1938, and subsequently returned to the Pontiac division of the penitentiary, formerly the reformatory, to avoid an expected petition for a writ of *habeas corpus*, based upon his confinement in an institution other than that specified in the *mittimus* of the criminal court. Respondent's return to the writ avers that relator's time was forfeited because of five specified violations and infractions of the rules of the institutions wherein he had been confined. Relator, in reply does not deny the acts enumerated, but asserts that the first four were trivial infractions.

The respondent challenges the jurisdiction of this court, contending that the granting or withholding of credit for good behavior is within the exclusive power of the executive department, and that its decisions are immune to judicial review. The allegations in relator's petition, that

his earned good time has been forfeited arbitrarily, conferred upon this court jurisdiction to determine whether or not administrative discretion has been abused. *People v. Hill,* 344 Ill. 246.

Relator contends that the allegations in his petition were admitted by respondent's motion to quash the writ and dismiss the petition, and, further, that the averments of infractions in the return are not competent evidence because they are not supported by a copy of the penitentiary records. The first part of this contention, in effect, is that respondent's motion, being in the nature of a demurrer, admits all facts well pleaded. By filing his answer and traverse to the return, the relator recognized that the respondent's motion had been irregularly filed without leave of court after his return was of record. The return to a writ of *habeas corpus* requires no supporting evidence, but imports verity until impeached. (*Holden* v. *Minnesota,* 137 U. S. 483; *Crowley* v. *Christiansen,* id. 86.) Had the relator desired to contest the averments in the return, it was his privilege to deny the occurrence of the infractions or to cause the production of pertinent records. On the contrary, his answer and traverse amount to a demurrer, since the acts are not denied, but four of them are attacked merely as trivial and the fifth is contended to be guiltless as a matter of law. The infractions, therefore, were properly presented for our consideration.

The authority of the Department of Public Welfare to forfeit the entire time allowable to a prisoner for good conduct upon his committing five infractions of prison rules is not denied, nor is the fact disputed that the relator committed four of the infractions charged in the return. The controversy here presented concerns the averment of the fifth infraction, consisting of relator's fight with Richard Loeb and cutting him, which resulted in his death. The conduct as charged is admitted, but the relator protests that the verdict of not guilty, returned by the jury in the circuit

court of Will county, exonerated him from the crime of murder, and that the forfeiture of his earned good time was an unauthorized review of the criminal proceeding, resulting in the imposition of punishment upon him for the same crime. The separate functions of the judicial and executive departments of government have been sharply delineated and must not be blended and confused. The power of the judiciary in a criminal proceeding is limited to the trial of an accused for a specific violation of law charged in an indictment and for no other offense, and, if he is adjudged guilty, to the pronouncement of the punishment provided by the legislature for the crime charged. (*People* v. *Whipp,* 352 Ill. 525.) This, the criminal court of Cook county did when it sentenced relator to an indeterminate term upon his plea of guilty to a charge of larceny. Similarly, the jury in the circuit court of Will county considered only the question of relator's guilt or innocence of the crime of murder, and its verdict did not encompass any other violation of the criminal law, which might have been committed by the same conduct, nor, for the greater reason, a violation of purely administrative regulations. The function of the executive department, on the other hand, is to administer the sentence imposed by the court and to apply, as an inherent part of every indeterminate sentence, the rules pertaining to the diminution of punishment for good conduct. (*People* v. *Connors,* 291 Ill. 614; *People* v. *Joyce,* 246 id. 124.) An indeterminate sentence is for the full term allowed by law for the crime, and the administrative department, in deciding that a prisoner's conduct does not merit his release for good behavior after serving less than the full term, cannot be said to increase the sentence. (*People* v. *Connors, supra.*) Although the forfeiture may flow from conduct involving a criminal offense, the prisoner is neither tried nor sentenced for a violation of the criminal law, and his punishment consists solely in the serving of the balance

of his sentence originally imposed. (*Story* v. *Rives,* 97 Fed. (2d) 181; *Jarman* v. *United States,* 92 id. 309.) It is for this reason that the administrative department is not required to adhere to formal procedure or comply with rules of evidence as in a criminal prosecution before a judicial tribunal. (*Christianson* v. *Zerbst,* 89 Fed. (2d) 40; *Ex Parte Stanton,* 169 Calif. 607, 147 Pac. 264.) From the essential difference between the powers, objectives and probative requirements of the criminal court, in trying an accused upon an indictment and sentencing him to imprisonment, and of the Department of Public Welfare, in determining an infraction of a prison rule by the same person and forfeiting his earned good time, it follows that a verdict entered in the former does not affect the jurisdiction of the latter independent tribunal to make a separate decision within the scope of its powers.

An analogous situation was presented in *Keats* v. *Board of Police Comrs.* 42 R. I. 240, 107 Atl. 74, where it was unsuccessfully contended that the conduct of a police officer, which caused his removal from office, had been exonerated by his previous acquittal upon a criminal charge. The court there stated: "Of course he cannot again be placed on trial for the same offense in a criminal court. So far as the criminal laws of the State are concerned he is not guilty of the offense charged in the indictment. But the verdict of not guilty is simply a bar to criminal prosecution for the same offense." In *Kavanaugh* v. *Paull,* 177 Atl. (R. I.) 352, where the removal of a chief of police was contested and a like contention held to be without merit, the court observed: "But the argument is that if he is a felon the legislature cannot authorize his removal by any authority until he has first been indicted, tried and convicted and sentenced by a constitutional court of justice. It is not well to confuse the powers of administrative and executive bodies to remove subordinates for any conduct showing unfitness for place and position, with the proceed-

ings of courts of justice to punish crimes. They are essentially different in their objects and may and do exist and move in their respective spheres without collision or inconsistency." In accord with these decisions, holding that an acquittal in a criminal proceeding does not prevent independent action of an administrative body upon the same conduct involved in the charge of crime, are *Bland* v. *State,* 38 S. W. (Texas) 252; *Skillman* v. *Board of Police Comrs.* 64 N. J. L. 489; *People* v. *Bingham,* 119 N. Y. S. 417. Conversely, it has been held that an executive department's removal of a district attorney for acts involving moral turpitude does not adjudicate him guilty of a crime or permit his disbarment under a statute providing for the automatic disbarment of an attorney convicted of a crime involving moral turpitude. *In re Reid,* 182 Cal. 88.

The jury in the circuit court of Will county, by its verdict of not guilty, simply determined that the evidence presented did not prove that the relator had killed Richard Loeb with malice aforethought. Moreover, in the criminal case the law required proof beyond a reasonable doubt to authorize conviction. No other criminal offense, nor the guilt or innocence of the relator's conduct apart from the offense specifically charged in the indictment, was presented for consideration. The jury did not attempt to pass upon the question of infraction of penitentiary rules, and a determination of this question would have been void as an invasion of the powers of the executive department. The Department of Public Welfare, on the other hand, did not try relator for a criminal offense nor impose punishment upon him for a crime. Its action was limited to the administration of his indeterminate sentence and, as an inherent part thereof, the rules relating to the diminution of punishment for good conduct. In deciding that the relator had committed an infraction by fighting with Richard Loeb and cutting him with a razor, the department remained within the limitations of its delegated disciplinary

powers. The forfeiture of relator's earned good time, therefore, rested upon five infractions in conformity with the controlling rules, and in a *habeas corpus* proceeding this court may not interfere with the exercise of an administrative function by attempting to substitute its own judgment or discretion for that of the department. *People* v. *Hill*, 350 Ill. 129.

The relator is remanded to the custody of the warden of the Pontiac division of the Illinois State Penitentiary.

*Relator remanded.*