(No. 27990.—

THE PEOPLE *ex rel.* George F. Barrett, Attorney General, Petitioner, *v.* GEORGE C. DIXON, Judge, Respondent.

*Opinion filed September 19, 1944.*

GEORGE F. BARRETT, Attorney General, (FELIX VISK, of Chicago, of counsel,) for petitioner.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The People *ex rel.* George F. Barrett, Attorney General, filed an original petition in this court, praying for the issuance of a writ of *mandamus* commanding George C. Dixon, judge of the circuit court of Lee county, to expunge from the records of that court his order entered upon a petition for a writ of *habeas corpus,* discharging Wayne Youngs from the custody of Joseph E. Ragen, warden of the Illinois State Penitentiary, Joliet Branch. Respondent judge of said court has filed a motion to dismiss which is treated by this court as a demurrer to the petition. An order was also entered by this court, on motion of respondent, striking certain extraneous statements from the reply brief of petitioner. The issue presents questions of law which develop the major proposition contended for by respondent, that the parole authorities of this State, by refusing and neglecting to rearrest the prisoner and return him to this State before the expiration of his maximum sentence, lost jurisdiction, and, therefore, the acts of the Illinois authorities were unauthorized by law.

The facts admitted by the motion to dismiss are that the prisoner was convicted on April 16, 1930, for confidence game, and sentenced for an indeterminate term of from one to ten years, and pursuant thereto he was incarcerated in the Illinois State Penitentiary at Joliet. On April 17, 1931, he was granted a conditional out-of-the-State parole to be fulfilled in Michigan. On May 11, 1931, he executed a parole agreement, which embodied the rules governing prisoners on parole, among which were that he must respect and obey the laws, that he must not leave his employment without the warden's consent, and that a violation of any of the rules forfeited the parole and rendered

the prisoner liable to be returned to the penitentiary to serve out the unsatisfied portion of his maximum sentence.

The statute in force at the time of the conviction, sentence and parole of Youngs provided, in substance, that until final discharge a parolee should be considered as remaining in the legal custody of the officers of the Department of Public Welfare and subject to be taken at any time within the enclosure of the penitentiary or other institution from which he was paroled, and that if any prisoner so conditionally released or paroled should flee from the State, he or she might be returned pursuant to the provisions of the laws of this State relating to fugitives from justice. (Ill. Rev. Stat. 1931, chap. 38, par. 807, sec. 7.) The same statute (chap. 38, par. 808, sec. 7a,) provided for the granting of an out-of-the-State parole, and, in substance, made provision that if any prisoner so paroled should violate his parole agreement, he should, "from the date of such violation be deemed to owe the State of Illinois service for the remainder of his or her maximum sentence, and should such prisoner or ward so violating said parole at any time return to the State of Illinois, he or she shall be again arrested," and returned to the penitentiary or other institution from which he was paroled. In determining the length of service he would still owe the State, the statute provided that he should be given credit on the maximum term for time faithfully served in prison and on parole "before violation." These statutory provisions were made, by statute, a part of his sentence. Ill. Rev. Stat. 1931, chap. 38, par. 802, sec. 2.

The prisoner first went to Michigan but violated his parole and went to Ohio, where, in 1931, he was convicted and sentenced to the penitentiary for a term of from one to three years. In 1932 the parole authorities of Illinois advised the Ohio prison officials that the State of Illinois would not incur the expense of returning him to the penitentiary in this State unless he should be apprehended

within this State. When he was released from the Ohio penitentiary in 1934, no effort was made to return him to Illinois. In 1935 he was arrested, convicted and sentenced to the Michigan penitentiary for a term of from two and a half to seven years. From that prison he was paroled in 1937, and the Illinois authorities made no effort to return him to the penitentiary at Joliet. In 1937 he was sentenced to serve a term in the Nebraska State Penitentiary for a term of two years. On June 28, 1939, he was turned over to the officers of New York, and in being taken to that State he was lodged in the county jail in Joliet, Illinois, over night, and the Illinois authorities allowed him to be taken to Buffalo, where he received a penitentiary sentence of three years. On October 28, 1939, the Illinois authorities placed with the New York authorities a detaining or arrest order and on July 17, 1941, he was returned to Illinois. On July 25, 1941, he was returned to the penitentiary at Joliet to serve the unsatisfied term of his maximum sentence.

It will be observed that if he had remained in the Illinois penitentiary, without a parole, from the time of his original commitment, his maximum · sentence would have expired on April 16, 1940. The arrest or detaining order was placed with the New York authorities about six months prior to that expiration date but he was not returned to Illinois until one year and three months after that date. However, the warden's warrant for his arrest as a parole violator was issued December 29, 1931, and the Illinois Parole Board declared him a parole violator on January 11, 1932.

It is argued, in support of the validity of the order of discharge, that the prisoner was illegally returned to Illinois and unlawfully reincarcerated because he, as a violator of an out-of-the-State parole, could be returned to the penitentiary only if he voluntarily returned to this State. The argument is that section 7 of the Parole Act, hereinbefore referred to, authorized an involuntary return of a prisoner,

who, while on an intrastate parole, flees beyond the limits of the State; and that section 7a of said act, by proper construction, restricts the power of the parole authorities in this State to rearresting an out-of-the-State parolee only upon his voluntary return to this State. This argument is not tenable for two reasons and has been fully and convincingly answered by previously well-considered cases where the facts were so clearly analogous as to be almost on all fours, insofar as the particular question is concerned.

In *People ex rel. Ross* v. *Becker,* 382 Ill. 404, it was urged that the State waived all right to claim for service unless a prisoner, on banishment parole, at some future time returned voluntarily to Illinois, and the contention was there based on section 7a, paragraph 808, of the statute, the same as is the contention in this case. This court answered that argument, contrary to the position now taken by respondent, in these words: "a paroled prisoner, who has left the State of conviction pursuant to the terms of his parole, as here, but later violates his parole, is a person charged with crime and a fugitive from justice subject to extradition," citing *Reed* v. *Colpoys,* 99 Fed. 2d 396, *certiorari* denied, 305 U. S. 598. The same contention was similarly settled in *People ex rel. McGee* v. *Hill,* 350 Ill. 129. It is no longer an open question in this State.

It has also been held that a prisoner, who, while out on parole, is convicted and sentenced for a subsequent offense, thereby forfeits, by his own conduct, the privileges granted by his parole, and his rights and status as to his first sentence, which was interrupted and suspended by his parole, were analogous to those of an escaped convict. (*Zerbst* v. *Kidwell,* 304 U. S. 359, 116 A. L. R. 808.) From the time of the violation of his parole he ceased to be under the legal custody of the Department of Public Welfare. He was then, in legal effect, on the same plane as an escapee from the custody and control of the warden. (*United States* v. *Slaymaker,* 263 U. S. 94, 44 S. Ct. 42.)

From the time the warden's warrant for his arrest was issued, December 29, 1931, his status was analogous to that of a fugitive from justice, the same as though he had been released on an intrastate parole and had fled beyond the limits of the State, as provided in section 7 of the Parole Act. His parole did not set him at liberty, as under a pardon. He was still technically in the custody of the State until he violated the conditions of his parole. *People v. Mikula*, 357 Ill. 481 ; *Purdue v. Ragen*, 375 Ill. 98.

An equally forceful reason why the prisoner was wrongfully discharged is that irrespective of whether he was illegally returned to this State, that would afford him no relief in this instance. He alleged in his petition for *habeas corpus* that he was unlawfully returned to this State, placed in the Chicago Detective Bureau, then lodged in the Cook county jail and, without a hearing, removed to the penitentiary. From the record it appears that he was returned to the penitentiary under the warden's warrant issued when the prisoner violated his parole. In respondent's motion to dismiss the petition for *mandamus* it is asserted that it appears that the prisoner was returned to this State without lawful authority, because section 7a, if properly construed, authorized his reincarceration only if he voluntarily returned, and the contention that he was unlawfully returned was only incidental to the major proposition that his return was not voluntary. It is not insisted that he was wrongfully returned because he was not legally extradited. The question of the manner in which he was returned, therefore, is not material to the question here presented. (*Carey v. Brady*, (D. C. Md.) 39 Fed. Supp. 515, affirmed, 125 Fed 2nd 253, *certiorari* denied, 316 U. S. 702, 62 S. Ct. 1305, 86 L. ed. 1770, 39 C. J. S. 491.) But even if the inquiry were material and open in the *habeas corpus* proceeding, it is not a cause for exemption from reincarceration as a parole violator that he might have been unlawfully brought within this jurisdiction. The courts have

many times had before them the analogous contention that an accused, wrongfully brought within the jurisdiction of the State whose laws has been offended, could not be tried for the crime but would be entitled to his discharge and a safe return to the asylum State. The weight of authority is, although there are some decisions to the contrary, that the accused is not thereby exempted from prosecution. (25 C. J. 271; *Ker v. People*, 110 Ill. 627, 119 U. S. 436; *Mahon v. Justice*, 127 U. S. 700, 8 S. Ct. 1204.) That was the common law, and that is the rule in this State. *People v. Berardi*, 332 Ill. 295.

It is contended that the State of Illinois lost jurisdiction to arrest and return the prisoner to the penitentiary at Joliet by their failure and neglect to retake him until after the expiration of the term of his maximum sentence. It must be conceded as definitely settled in this State that from the date of his parole violation in December, 1931, he owed the State of Illinois service for the remainder of his maximum sentence, or eight years and approximately three and a half months. (*People v. Crowe*, 387 Ill. 53; *Purdue v. Ragen*, 375 Ill. 98; *People ex rel. Ross v. Becker*, 382 Ill. 404; Ill. Rev. Stat. 1931, chap. 38, par. 808, sec. 7a.) This term could be satisfied only by actual service, unless remitted by some legal authority. (*People ex rel. Ross v. Becker*, 382 Ill. 404; *Purdue v. Ragen*, 375 Ill. 98; *People ex rel. Cassidy v. McKinley*, 372 Ill. 247; *People ex rel. Kerner v. McKinley*, 371 Ill. 190; *People ex rel. Crews v. Toman*, 367 Ill. 163.) There were only two methods provided by law for this unsatisfied sentence to be legally remitted, (1) a compliance with the conditions of his parole followed by a discharge granted by the parole authorities, approved by the Governor; (*People ex rel. Michaels v. Bowen*, 367 Ill. 589.) and (2) by a pardon or commutation of sentence by the Governor, the power to issue which cannot be delegated. (*People ex rel. Brundage v. LaBuy*, 285 Ill. 141; *People ex rel.*

*Fullenwider* v. *Jenkins*, 322 Ill. 33.) It is conceded that these are the only methods by which the term of unsatisfied service could be remitted by some legal authority, and that no such authority had been exercised. The failure of officials to perform their duties creates no right in a defendant to have his discharge as a beneficiary of their failure. *People* v. *Crowe*, 387 Ill. 53; *People ex rel. Kerner* v. *McKinley*, 371 Ill. 190; *People ex rel. Courtney* v. *Thompson*, 358 Ill. 81; *People ex rel. Martin* v. *Mallary*, 195 Ill. 582.

In *Anderson* v. *Corall*, 263 U. S. 193, 44 S. Ct. 43, the prisoner sought release on the ground that he was not retaken on the warden's warrant until after the expiration of the time he would have been entitled to a discharge at the end of his maximum sentence if he had not been paroled. The parole in that case, as in this, had been revoked and the warden's warrant was issued before the term of his sentence had expired. In refusing his claim for a discharge the court held, in effect, that his service was interrupted by the violation of his parole, as evidenced by the warden's warrant, and that he was thereby placed on the same plane as an escapee from the custody of the warden, so that his term of sentence had not expired at the time he was retaken, because the time the service was interrupted cannot be counted as time spent in legal custody under the sentence. That is the sound view in such cases and in harmony with the views of this court.

The circuit court of Lee county had no jurisdiction to enter the order discharging the prisoner, and any other order except one dismissing the proceeding is void. *People* v. *Crowe*, 387 Ill. 53; *People ex rel. Courtney* v. *Thompson*, 358 Ill. 81; *People ex rel. Carlstrom* v. *Shurtleff*, 355 Ill. 210.

For the foregoing reasons, the motion to dismiss is overruled and the writ is awarded.

*Writ awarded.*