**URYGA v. RAGEN et al.**

No. 10073.

United States Court of Appeals
Seventh Circuit.

May 2, 1950.

Nathan Wolfberg, Charles Liebman, Chicago, Ill., for appellant.

Marion J. Hannigan, Chicago, Ill., for appellees.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff, claiming to be a citizen of Poland, instituted this suit in the District Court against the then warden and three prior wardens of the penitentiary and the former director of the Department of Public Safety of the State of Illinois,[1] charging them with his false imprisonment. Defendants answered, praying strict proof of the averment of citizenship, denying the charge, and asserting that at all times during his confinement, plaintiff was legally imprisoned. By consent of the parties, the court ordered the trial to proceed in two sections, first, upon the question of whether plaintiff could make proof of his case, and second, in the event the court should find for plaintiff on the first issue, a determination of the amount of plaintiff's damages. In the hearing on the first question, the parties stipulated the facts. Upon conclusion of that trial, the court dismissed plaintiff's claim on the ground that he had failed to prove a liability against defendants.

Plaintiff was convicted in November, 1927, of burglary and sentenced, pursuant to Illinois law, to an indeterminate period of from one to twenty years. On October 31, 1931, he was paroled. Because of his violation of the terms of his release in various respects, a warrant issued for his arrest as parole violator on November 15, 1932. However, before being apprehended, he was, on February 2, 1933, convicted of grand larceny and committed to the penitentiary for another indeterminate term,— from one to ten years. On April 10, 1933,

1. A. L. Bowen, another former director of what is now the Department of Public Safety was made defendant but the suit against him abated and was dismissed because of his death.

the authorities declared him a violator of his parole upon his first sentence and continued the case until the minimum sentence under the second conviction had been served. On March 12, 1934, the board denied parole on the first sentence and continued the case.

On June 12, 1935, plaintiff was paroled on both commitments. The state charged that shortly thereafter three inmates of the penitentiary escaped with the connivance or aid of plaintiff, and he was arrested in Chicago in the company of one White, one of the escaped convicts, whom he admitted harboring. On June 12, 1935, a warrant issued, charging him with having violated his parole on both sentences: He was apprehended on July 3, 1935, and returned to the penitentiary.

The record discloses that prior to that time, plaintiff had, in some twelve different instances, violated the rules of the penitentiary and the Department of Public Safety and the laws of Illinois. In view of these facts, on August 5, 1935, the director issued an order revoking all statutory good-time accruing under the two sentences in case of good behavior. The parole board shortly thereafter declared him a violator of his parole under both sentences and passed his case for the maximum of the second sentence. He was discharged upon his second sentence when it had been served in full, in March, 1943, but was retained on the first commitment because of the revocation of his good-time allowance and because of his infractions of rules, regulations and laws, occurring subsequent to his first parole and return to the penitentiary.

On May 4, 1944, the Director of the Department of Public Safety ordered restored to plaintiff certain of his good-time allowance, so that he was discharged from the first sentence on June 12, 1944. Claiming that his sentence had expired on July 3, 1939, plaintiff instituted the suit. The District Court held that the Department acted within its legal powers when it deprived plaintiff of credit for good time, and dismissed the suit.

Under the applicable Illinois statutes, Ill.Rev.Stat.1949, c. 38, § 801 et seq.,

an indeterminate sentence is a certain definite sentence for the maximum term. People v. Connors, 291 Ill. 614, 126 N.E. 595, affirmed 260 U.S. 695, 43 S.Ct. 11, 67 L.Ed. 468. This was our decision, in view of the Illinois authorities, in United States ex rel. Palmer v. Ragen, 7 Cir., 159 F.2d 356, certiorari denied 331 U.S. 823, 67 S.Ct. 1311, 91 L.Ed. 1839. This maximum term of punishment can be satisfied only by actual, complete service "unless remitted by some legal authority." People ex rel. Ross v. Becker, 382 Ill. 404, 47 N.E.2d 475, 480; Purdue v. Ragen, 375 Ill. 98, 30 N.E.2d 637. In Illinois, by only two methods may a sentence be legally remitted: (1), by compliance with the conditions of a parole, followed by a discharge duly granted; or, (2), by a pardon or commutation of sentence by the Governor. People ex rel. Ross v. Ragen, 392 Ill. 465, 64 N.E.2d 862. See also People ex. rel. Neville v. Ragen, 396 Ill. 565, 72 N.E.2d 175; People ex rel. Barrett v. Dixon, 387 Ill. 420, 56 N.E.2d 816; People ex rel. Barrett v. Crowe, 387 Ill. 53, 55 N. E.2d 84. The provisions of the Sentence and Parole Act do not alter the punishment. People v. Nowasky, 254 Ill. 146, 147, 98 N.E. 242. Consequently, a convict has no right to demand, as a matter of law, that he be discharged before the expiration of his maximum sentence, People v. Connors, 291 Ill. 614, 126 N.E. 595, and that parole authorities may exercise their discretionary power in that respect, delegated to them by the legislature, is likewise clear. People v. Connors, 291 Ill. 614, 126 N.E. 595; People ex rel. Day v. Lewis, 376 Ill. 509, 34 N.E.2d 712; People v. Tyson, 393 Ill. 108, 65 N.E.2d 796. It follows, therefore, that upon his sentences, plaintiff was properly committed to the penitentiary under the indeterminate sentence law for a maximum period of twenty years on the first and ten years on the second conviction, from which he could not, under the authorities quoted, be released or discharged except by pardon by the Governor or by administrative parole proceedings. Inasmuch as no claim is made that he was ever pardoned, plaintiff's claim of wrongful detention must grow out of some arbitrary in-

fraction of their statutory duty by the administrative officials.

■ Under the pertinent statute, Ill.Rev. Stat.1949, c. 108, § 45, the Department of Public Safety has authority to prescribe rules for diminution of sentences on account of good time. The controlling rule promulgated by that department provides that any convict entitled to diminution of his sentence by reason of the statute who shall be guilty of violating the prison rules or laws of the state, shall forfeit certain allowances for good time which would otherwise be credited to him under the statute. The concluding portion is as follows: "For more than four offenses, the Director of the Department of Public Safety, upon the recommendation of the Warden of the Division of the Penitentiary in which the convict is imprisoned, shall have the power at his discretion, to deprive such convict of any portion or all of the good time that the convict may have earned." Under this rule and the formerly existing statute, Smith-Hurd Stats. c. 108, § 45, which was incorporated in it, before a prisoner is entitled to full allowance of good time, his penitentiary record must affirmatively show no infractions of the rules or regulations of the penitentiary or the laws of the state and that he has performed in a faithful manner the duties assigned to him in an orderly and peaceful manner. When compliance with each of these conditions appears, the prisoner becomes entitled to diminution of time from his sentence, as shown by a table made a part of the statute.

■ As we have seen, after the plaintiff was committed on his first sentence and prior to revocation of his good-time allowance, on July 27, 1935, he had, in at least twelve instances, committed infractions of the rules of the Department and the laws of Illinois. It appears clear, therefore, in pursuance of the language above quoted from the rule, that the Director had on July 27, 1935, at the time he revoked plaintiff's good-time allowance, ample and just cause for so doing. His authority to revoke all good-time allowance came into existence upon plaintiff's commission of more

than four offenses. In other words, at that time, inasmuch as it appeared that plaintiff had failed to perform the conditions required of him in order to receive reward by way of good-time allowance, it was clearly within the discretion of the administrative officers to deny that of which he, by his own infractions, had deprived himself.

■ It is true, of course, that the Illinois statute governing allowances for good time enters into all sentences and that the courts and administrative bodies of Illinois are bound by the same. However, such an allowance is not a vested right but a conditional one, which, by the statute, becomes effective only when the prisoner, having conducted himself properly, has earned an allowance. Here the plaintiff was entitled to no credit on his sentences after he had violated the terms and conditions of his two paroles. People ex rel. Barrett v. Crowe, 387 Ill. 53, 55 N.E.2d 84; People ex rel. Barrett v. Dixon, 387 Ill. 420, 56 N.E. 2d 816. By his violations, while absent from the penitentiary, plaintiff forfeited and lost the credit previously accruing. In other words, a prisoner's good time is allowed at the end of his term of imprisonment, when and if its allowance, together with the time served, will entitle him to his discharge, the sentence thus having been served in full. The right to good time, then, is contingent until the time arrives when its authorized allowance will end his term of imprisonment. When, however, he has so conducted himself that the right of credit is gone, it is as though it never accrued to him. Lupo v. Zerbst, 5 Cir., 92 F.2d 362.

That plaintiff did not, by his conduct after his good-time allowance had been revoked, earn any further good time is apparent from the fact that in some thirteen instances after that date and before his final discharge, he committed further infractions. So, whether we consider his conduct prior to the revocation of his allowance or that subsequent thereto, we find that, inasmuch as the rule provides that the Department may, after four infractions, revoke his allowance for good

time or deny the same, the director was fully justified at both times in refusing to allow good time to plaintiff. That eventually the Department saw fit to make him an allowance and discharge him before he would have been entitled to a discharge, in the absence of such an allowance, does not create any right of action in him. It was merely his good fortune that the Department, within its discretion, did finally grant him some allowance.

■ We think, too, that under the Illinois law, the wardens were merely administrative employees acting in pursuance of writs and orders valid on their face and that they could not, under the circumstances of this case, be liable for false imprisonment. Nor can the former Director of the Department of Public Safety be liable, in view of the fact that he did not trespass upon his discretionary authority by arbitrary action.

■ It is clear, we think, from what we have said, that plaintiff was not deprived of due process of law. In view of the governing Illinois statutes providing reasonable rules governing judgments of conviction, allowances for good time and parole, the Department of Public Safety was legally authorized to act as it did.

■ We might add that the court below would have been justified in deciding that plaintiff made out no cause of action for the reason that it was incumbent upon him to show that the court had jurisdiction, namely, that the plaintiff was a nonresident. No such proof was offered; hence, upon the case submitted, plaintiff failed to make out a cause of action in a United States Court. Diversity of citizenship is a condition of jurisdiction, and, when that does not appear upon the record, the court, of its own motion, will order the action dismissed. Interior Construction & Improvement Co. v. Gibney, 160 U.S. 217, 16 S.Ct. 272, 40 L.Ed. 401.

The judgment is affirmed.