(No. 30552.—

THE PEOPLE *ex rel.* Charles Milburn, Petitioner, *vs.* WALTER NIERSTHEIMER, Warden, Respondent.

*Opinion filed November 18, 1948.*

CHARLES MILBURN, *pro se.*

GEORGE F. BARRETT, Attorney General, (EDWARD WOLFE, of counsel,) both of Springfield, for respondent.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

Charles Milburn, a prisoner held in the Menard Branch of the Illinois State Penitentiary under a parole-violation warrant, seeks a release on *habeas corpus.*

On June 13, 1938, upon a plea of guilty of the crime of robbery, he was sentenced by the circuit court of St. Clair County for a term of not less than one nor more than twenty years. On June 11, 1946, the Division of Correction entered a purported order of parole, effective July 30, 1946, with the proviso that the United States Marshal of Danville, Illinois, and the United States Attorney of St. Louis, Missouri, be notified before petitioner's release. On July 30, 1946, he was turned over to the United States Marshal and taken to a Federal court at St. Louis, Missouri, where he was convicted of a Federal offense and placed on probation. At the time of his delivery to the Federal authorities he signed a form of parole agreement wherein it was recited that he was thereby "temporarily and conditionally * * * Turned over to U. S. Marshall of Danville, Ill." No sponsor or place of employment was designated. After he was placed under Federal probation the Illinois Division of Correction entered an order as follows: "15455—Charles Milburn. Application for permission to do out-of-state parole in Missouri, granted." The record contains no statement that an application for such parole was actually made. The respondent in his

return alleges that pursuant to an arrangement between the Illinois and Missouri parole authorities the petitioner was placed under the supervision of the latter, a proper home and employment having been found for him in St. Louis, Missouri. Nothing appears in the record before this court showing the terms and conditions of the alleged out-of-State parole. It does not appear that any parole papers were signed by or delivered to petitioner, other than that whereby he was turned over to the United States Marshal.

The return of respondent shows that petitioner disappeared from his place of employment in St. Louis; that he was subsequently discovered at the Indiana State Farm, to which he had been committed upon conviction of various misdemeanors; that a parole-violation warrant was issued and an order entered by the Division of Correction declaring him a defaulter on out-of-State parole; and that upon expiration of his sentence in the Indiana institution he was extradited to Illinois and incarcerated in the State Penitentiary at Menard. Thereafter, on May 12, 1947, petitioner was given a hearing, declared to be a parole violator, and passed for the maximum of his sentence.

Petitioner, in his petition for the writ, assumes that his delivery to the Federal authorities was made by virtue of a warrant of extradition issued by the Governor of Illinois. The respondent in his return denies that the Governor of the State of Illinois ever ordered petitioner extradited from Illinois to Missouri. Petitioner filed a document entitled "Traverse To Respondent's Brief," in which he sets forth a conversation in his presence between a deputy warden and the United States marshal in the former's office at the time of his transfer to the latter's custody. The deputy warden is alleged to have asked the United States marshal if he wanted extradition papers, to which the marshal replied, "No, that he had already obtained his own." This is the only matter alleged to overcome respondent's asser-

tion that the Governor did not order petitioner extradited. No copies of any extradition papers are produced and the record is silent upon the method whereby respondent obtained any authority to turn the prisoner over to Federal authorities.

The petitioner's claim to his release is based on paragraph 2 of section 22 of the Habeas Corpus Act, which provides that a prisoner can be discharged "Where, though the original imprisonment was lawful, yet, by some act, omission or event which has subsequently taken place, the party has become entitled to his discharge." (Ill. Rev. Stat. 1947, chap. 65, par. 22.) He contends that he was not released by virtue of any parole issued by the Division of Correction, and that "the warrant of extradition issued by the Governor of Illinois, which resulted in the delivery of your petitioner to the federal authorities, constituted a waiver of jurisdiction by the State of Illinois over the person of your petitioner, and acted as a pardon or commutation of the sentence and relieved him from serving the balance of the sentence imposed upon him by the St. Clair Circuit Court."

If his delivery to the Federal authorities was in fact made upon a warrant of extradition issued by the Governor, his contention would prevail, under our holding in *People ex rel. Barrett v. Bartley,* 383 Ill. 437. In that case the Board of Pardons and Paroles entered an order on April 20, 1936, directing the release of the prisoner on parole, to be effective May 16, 1936. On May 15, 1936, the Governor of Illinois honored a requisition of the State of Wisconsin for the prisoner as a fugitive from justice of that State, and issued his Governor's extradition warrant authorizing the extradition of the prisoner from Illinois to Wisconsin. On May 16, 1936, the warden delivered the prisoner to the agent of the State of Wisconsin, pursuant to the Governor's warrant, and on the same day the prisoner signed a form of parole agreement which failed to name

any sponsor. In Wisconsin he was convicted upon the charge for which he was extradited, and was sentenced to a term in the Wisconsin State prison. After his release from that institution he went to Ohio where he was later convicted of another offense and sentenced to a term in the Ohio State Penitentiary. After his release from that imprisonment he was returned to Illinois by extradition proceedings for an alleged violation of his parole agreement. We there held that the action of the Governor in extraditing the prisoner from Illinois to Wisconsin while he was serving a sentence in the Illinois State Penitentiary operated as a waiver of any further jurisdiction over his person, and that his discharge on *habeas corpus* proceedings was therefore proper.

In the *Bartley case* we said, however, that "the waiver of jurisdiction of a State over a fugitive is a prerogative of the Governor." Here it does not sufficiently appear from the record that the Governor signed any extradition papers or had anything whatever to do with the steps whereby petitioner was turned over to Federal authorities. The maximum term of petitioner's indeterminate sentence was twenty years. This term can be satisfied only by actual service unless it is remitted by some legal authority. There are only two methods whereby an unsatisfied sentence can be legally remitted, (1) compliance with the conditions of a parole followed by a discharge granted by the parole authorities, approved by the Governor; and (2) a pardon or commutation of sentence by the Governor, the power to issue which cannot be delegated. (*People ex rel. Ross v. Ragen,* 392 Ill. 465.) In order to constitute petitioner's delivery to Federal authorities a waiver of jurisdiction over him and thus, in effect, a pardon or commutation of his sentence, it was necessary that the delivery be made pursuant to the direction of the Governor. No showing having been made that the Governor authorized his release to Federal authorities, petitioner's contention cannot prevail.

The question remains, what was the legal effect of the act of the Division of Correction in taking petitioner out of the penitentiary and delivering him to Federal authorities for trial in Missouri? Respondent concedes that this release was erroneous as a matter of parole. The impropriety would clearly appear from section 7 of the Sentence and Parole Act, (Ill. Rev. Stat. 1945, chap. 38, par. 807,) which provides in part that "no prisoner * * * shall be released from * * * the penitentiary * * * until the Division of Correction shall have made arrangements or shall have satisfactory evidence that arrangements have been made for his or her honorable and useful employment while upon parole in some suitable occupation and also for a proper and suitable home free from criminal influence and without expense to the State." It is apparent that no authority in law existed for the action of the Division of Correction. It is urged by respondent that the order of the Division of Correction purporting to grant petitioner an out-of-State parole, entered at a time when he was beyond the borders of this State, effectively placed him upon such parole. No showing is made of compliance with the statute, as to the terms and conditions of this parole which petitioner is alleged to have violated, or that any agreement for such parole was made at all. It follows, therefore, that petitioner could not be held by respondent as a violator of a parole which was never legally made.

The record thus shows that petitioner was never released on parole. It also shows that he was illegally and improperly turned over to Federal authorities at a time when he was serving a term of imprisonment under the judgment and sentence of the circuit court of St. Clair County. The conclusion must follow that petitioner was liable to be apprehended and returned to the penitentiary at any time. The failure of officials to perform their duties creates no right in a prisoner to have his discharge as a beneficiary of their failure. (*People ex rel. Ross* v. *Ragen,*

392 Ill. 465.) The petitioner was lawfully sentenced by a court of competent jurisdiction having the power to sentence him to the penitentiary where he is presently confined for the crime of which he stands convicted. The State of Illinois, under that sentence, has jurisdiction over the petitioner for the maximum term thereof. As there is no waiver of jurisdiction under the facts as presented in the record, it follows that until petitioner has served the maximum term, Illinois' jurisdiction over him continues and he can be legally imprisoned until that maximum sentence has been served or until he has been released by parole authorities or by the Governor, in accordance with the pertinent statutes. Petitioner at present has been neither paroled nor discharged from the service of his maximum sentence, and it has not been remitted under any authority of law.

Petitioner has shown no good cause for discharge, and he is therefore remanded to the custody of the warden.

*Petitioner remanded.*