(No. 30940.—

THE PEOPLE *ex rel.* Joseph F. Miller, Petitioner, *vs.* WALTER NIERSTHEIMER, Warden, Respondent.

*Opinion filed March 24, 1949.*

JOSEPH F. MILLER, *pro se.*

GEORGE F. BARRETT, Attorney General, (EDWARD WOLFE, of counsel,) both of Springfield, for respondent.

Mr. JUSTICE WILSON delivered the opinion of the court:

Joseph F. Miller, an inmate of the Illinois State Penitentiary, Menard Branch, filed in this court an original petition for a writ of *habeas corpus* against Walter Nierstheimer, Warden, seeking to obtain his discharge from custody. The writ issued, the respondent made a return, and on the record thus made the cause was submitted.

The petition and return disclose the following facts. On March 28, 1940, upon a plea of guilty in the circuit court of Fayette County, Miller was convicted of the crime of escaping from the Illinois State Farm and sentenced to imprisonment in the penitentiary for a term of not less than one year nor more than ten years. Petitioner entered the Menard Branch of the Illinois State Penitentiary on the following day. Subsequently, parole authorities of the State of Indiana filed a detainer warrant against petitioner charging him with violation of a parole to which he had been admitted following an earlier sentence and imprisonment in Indiana.

On March 17, 1941, the Illinois Parole Board entered an order in petitioner's case, as follows: "Paroled. Effective when the Indiana Authorities come for him. If not

taken, case to be referred back to the Board." On May 8, 1941, petitioner executed a parole agreement and, on the same day, was turned over to the Indiana authorities. He was taken to the Indiana State Reformatory, at Pendleton, and there confined as a parole violator until July 17, 1943, when his sentence expired and he was discharged. Prior to his release, arrangements were made between the Illinois and Indiana parole officials whereby petitioner was to resume his Illinois parole in Indiana. The Indiana authorities provided him with a home and a sponsor and he became employed by the Goodyear Tire and Rubber Company at Muncie, Indiana. Subsequently, petitioner made written monthly reports to the Illinois Parole Board and was credited with one year and six days on his sentence.

On July 15, 1944, petitioner was charged, in Indiana, with the theft of a tire and disappeared from his home and employment. In November, 1944, a parole violation warrant was issued in Illinois and the Division of Correction of the Department of Public Safety entered an order declaring petitioner to be a defaulter on his out-of-State parole. In July, 1947, petitioner was discovered in the Indiana State Farm, at Greencastle, serving a sentence of thirty days for petit larceny. Upon being released in Indiana on August 3, 1947, he was removed to Illinois and again confined in the Illinois State Penitentiary at Menard. The Division of Correction, at a meeting on September 16, 1947, declared Miller to be a parole violator and determined that he should serve the maximum term of his sentence and that, upon earning all allowable time, he would be discharged, sentence served in full, on October 18, 1951.

Petitioner does not attack his original conviction and sentence to the penitentiary in 1940, but asserts that, by reason of subsequent acts and events, he has been illegally detained and restrained of his liberty since June 29, 1946, and is entitled to an immediate release. More specifically, he contends (1) that his parole to the Indiana State Re-

formatory, at Pendleton, in 1941, was illegal and void; (2) that, since he was never legally paroled from the Illinois State Penitentiary, he cannot be detained as a parole violator; (3) that, by deducting all possible good time, a sentence of ten years is reduced to six years and three months, and (4) that, having earned all good time and lost none, he was entitled to be discharged on June 29, 1946. Petitioner denies that his maximum sentence of ten years, less good time earned, will not expire until October 18, 1951, as determined by the Division of Correction. From the difference between the dates of expiration of sentence contended for, it is evident that the parole officials do not consider the two years petitioner was paroled to the Indiana State Reformatory or the three years between his disappearance in 1944 and his re-entry into the penitentiary in 1947 as time served under his sentence in Illinois.

The first question presented for determination is whether petitioner's parole was regular and lawful at its inception. Section 7 of the Sentence and Parole Act, as it existed in May, 1941, provided in pertinent part, "* * * that no prisoner * * * shall be released from * * * the penitentiary * * * until the Department of Public Welfare shall have made arrangements or shall have satisfactory evidence that arrangements have been made for his or her honorable and useful employment while upon parole in some suitable occupation and also for a proper and suitable home free from criminal influence * * *." (Ill. Rev. Stat. 1939, chap. 38, par. 807.) Although section 7 has since been frequently amended, the sole change in the quoted provision of the statute merely reflects the substitution of the Division of Correction of the Department of Public Safety for the Department of Public Welfare in Parole matters. (Ill. Rev. Stat. 1947, chap. 38, par. 807.) Respondent virtually concedes that the parole of petitioner to the Indiana State Reformatory was erroneous as a matter of law. The order of March 17, 1941, releasing petitioner

to the Indiana authorities did not provide for a home or place of employment and, obviously, the Indiana State Reformatory was neither an "honorable and useful employment" nor a "home free from criminal influence." The action of the Parole Board was unwarranted by the Sentence and Parole Act and the purported parole was, therefore, illegal and void at its inception. *People ex rel. Milburn* v. *Nierstheimer*, 401 Ill. 465.

The next question to be decided is whether the parole, although originally unlawful, subsequently became effective as a regular and legal out-of-State parole. Respondent urges that this result was accomplished in July, 1943, when petitioner was discharged from the Indiana State Reformatory and provided with a sponsor, a home and employment by the Indiana parole authorities, acting upon the request of the Illinois Division of Correction. The contention advanced was recently rejected in *People ex rel. Milburn* v. *Nierstheimer*, 401 Ill. 465, a strikingly similar case. There, Charles Milburn, sentenced to a term of not less than one year nor more than twenty years, was, by order of the Division of Correction, turned over to the United States Marshal at Danville, and the prisoner signed a parole agreement so providing. Milburn was taken to St. Louis, Missouri, tried and convicted of an offense against the United States government and admitted to probation. Thereupon, the Division of Correction entered a second order purporting to grant an application for an out-of-State parole in Missouri, although, in fact, no application had been made. By arrangement with Missouri authorities, a proper home and employment in St. Louis were provided, but Milburn never executed any agreement consenting to this parole. Subsequently, Milburn disappeared from St. Louis and, later, was discovered in the Indiana State Farm. Upon completion of his sentence there, he was extradited to Illinois and returned to the penitentiary. For the reason that the prisoner's maximum sentence of twenty years had been

neither served nor remitted, he was, upon petition for *habeas corpus,* remanded to custody. In the course of the opinion, however, we held that the order purporting to grant an out-of-State parole was insufficient to establish a regular and lawful parole because "No showing is made of compliance with the statute, as to the terms and conditions of this parole * * * or that any agreement for such parole was made at all."

In the case at bar, there is, likewise, no showing of compliance with the statutory provisions relative to parole or that petitioner ever executed a parole agreement other than the original agreement transferring him to the custody of the Indiana authorities. As a matter of fact, in the instant case, the Division of Correction did not enter a second order purporting to grant petitioner a regular out-of-State parole. It is apparent, then, that petitioner's parole, originally unlawful, was not thereafter rendered legally effective. The purported parole being unlawful both at its inception and throughout its existence, it follows, therefore, that petitioner cannot be detained by respondent as a violator of a parole which never legally existed. *People ex rel. Milburn* v. *Nierstheimer,* 401 Ill. 465.

Although petitioner cannot be held as a parole violator, it remains to be determined whether he has satisfied his sentence and is thus entitled to a discharge. Petitioner contends that his sentence of from one year to ten years expired on June 29, 1946, while respondent asserts that petitioner will not become eligible to be released until October 18, 1951. The allegation that a maximum period to be served on a ten-year sentence, less all possible good time, is six years and three months is not denied by respondent and must be taken as true. Of greater importance, however, is the unexpressed but necessary implication of petitioner's argument that he considers himself to be entitled to credit for all time spent outside the penitentiary during his unlawful parole and, further, is entitled to additional

credits for good behavior during this period. The mere statement of the proposition underlying petitioner's argument is sufficient to condemn it.

Miller was lawfully sentenced to imprisonment in the penitentiary for a term of not less than one year nor more than ten years. Under this sentence, the State of Illinois has jurisdiction over him for the period of the maximum term. (*People ex rel. Neville* v. *Ragen,* 396 Ill. 565; *People ex rel. Ross* v. *Becker,* 382 Ill. 404; *People ex rel. Day* v. *Lewis,* 376 Ill. 509.) This term can be satisfied only by actual service for the full period of ten years unless it is reduced by good time or is remitted by legal authority. (*People ex rel. Milburn* v. *Nierstheimer,* 401 Ill. 465; *People ex rel. Neville* v. *Ragen,* 396 Ill. 565; *People ex rel. Ross* v. *Ragen,* 392 Ill. 465.) There are only two ways whereby a sentence unsatisfied by actual incarceration can be legally remitted: (1) admission to and compliance with the conditions of parole, (constructive imprisonment,) followed by a discharge issued by the parole authorities and approved by the Governor, and (2) a pardon or commutation of sentence by the Governor. *People ex rel. Neville* v. *Ragen,* 396 Ill. 565; *People ex rel. Ross* v. *Ragen,* 392 Ill. 465; *People ex rel. Barrett* v. *Dixon,* 387 Ill. 420.

Petitioner does not claim that his sentence was remitted by a pardon and properly asserts that he was never lawfully admitted to parole. In the absence of a pardon or a parole, petitioner is liable for actual service of his maximum term of imprisonment, with appropriate reductions for time served with good behavior. The prisoner is not entitled to be released by reason of his illegal parole, however, for, as frequently announced, the failure of parole or prison officials to perform their duties creates no right in a prisoner to have his discharge as a beneficiary of their failure. (*People ex rel. Ross* v. *Ragen,* 392 Ill. 465; *People ex rel. Barrett* v. *Dixon,* 387 Ill. 420; *People ex rel. Kerner* v. *McKinley,* 371 Ill. 190.) A prisoner at large

on an illegal and void parole while under lawful sentence to the penitentiary is on the same plane as an escapee. *People ex rel. Milburn* v. *Nierstheimer,* 401 Ill. 465.

The record before us discloses that petitioner was not within the confines of the pentitentiary from May 8, 1941, to August 4, 1947. Whether the maximum sentence be considered ten years or only six years and three months, by reason of allowances for good time, it is clear that, in either event, petitioner has not satisfied his maximum sentence by the prerequisite actual service in the penitentiary and is not entitled to discharge.

The petitioner is remanded to the custody of the warden.

*Petitioner remanded.*