(No. 31799.

THE PEOPLE *ex rel.* Martin Pring, Petitioner, *vs.* BROWNING ROBINSON, Warden, Respondent.

*Opinion filed March 22, 1951.*

MARTIN PRING, *pro se.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (WAYNE R. COOK, of Danville, of counsel,) for respondent.

Mr. JUSTICE GUNN delivered the opinion of the court:

Petitioner, Martin Pring, has filed in this court his original petition for *habeas corpus* against Browning Robinson, warden of the Illinois State Penitentiary at Menard,

Illinois, claiming he is illegally detained in said penitentiary by some act, omission, or event which has taken place subsequent to the imprisonment, which was originally lawful. The People, through the Attorney General, have filed their return traversing the legal effect of the petition.

The material facts set out in the petition show that in the year 1928, the petitioner, who was then eighteen years of age, pleaded guilty in Wabash County, Illinois, to the crime of burglary and larceny, and was sentenced to imprisonment in the reformatory for a minimum of one year to a maximum of life. He was paroled in June, 1929, to a sponsor in the State of California, but on January 30, 1930, was declared a defaulter upon his parole. In 1930, petitioner was indicted again, in White County, Illinois, for the crime of burglary and larceny, and pleaded guilty thereto, and was given a like sentence as in the previous case, and after serving four years upon the last conviction was paroled in 1934. It is the circumstances arising out of this second parole upon which petitioner bases his claim for a writ of *habeas corpus.*

While he was out on parole from his first conviction he committed the offense of assault with intent to kill, and was sentenced for not less than five nor more than fifteen years in the penitentiary in the State of Arizona, but escaped after serving a few months, and it was after this escape he committed the second offense in Illinois. In 1934, he was given an alleged parole from the Illinois penitentiary which bore upon its face the following: "Effective when the Arizona Authorities come for him. This order to cover parole violation from Pontiac as No. 7327." At the same time the petitioner signed the so-called parole agreement the Arizona penitentiary authorities came to Illinois, where he was surrendered to them by the Illinois authorities, and he thereafter served eight years in the Arizona penitentiary. At the time of his discharge from the latter penitentiary he was released on condition that he

leave the State of Arizona. He was later apprehended in California, and while in custody in the latter State was extradited to the State of Illinois, and is now serving in the penitentiary as a parole violator in that he left the State of Arizona without the consent of the parole authorities in the State of Illinois.

The petitioner claims that the State has lost the right to control his actions by voluntarily surrendering him to the prison authorities in the State of Arizona, and also that he was improperly returned because he was never a fugitive from justice from the State of Illinois, but that he was permitted by the State of Illinois to be removed to Arizona, and that he never voluntarily left that State of his own volition. The Attorney General claims that the petitioner has waived all of his rights by the signing of a so-called parole agreement, under which he was surrendered to the State of Arizona.

We cannot agree that the agreement set forth by the Attorney General constitutes an enforcible contract between the petitioner and the Department of Public Welfare. In the first instance the statute permits the penitentiary authorities to grant paroles to convicts, which authorize them to live outside of the penitentiary until they have been rehabilitated. The term "parole" means a conditional but revocable release from a penitentiary, and its very terms imply freedom from the confinement of the penitentiary walls. Such has been held to be the meaning in practically all of the States where the question has arisen.

In this case the petitioner was not given his liberty to follow the terms of a parole contract, but was surrendered to the Arizona prison authorities, and remained thence in custody for the following eight years, and never was during this eight-year period at liberty conditionally or otherwise. Moreover, the parole agreement, in view of the special circumstances of the petitioner, never was an effective, enforcible agreement because of its provisions. The delivery

to the Arizona prison authorities made it impossible for the defendant to perform the terms thereof, as they were violated even before he had served more than a day in the Arizona penitentiary. The terms of the agreement required notice monthly, whether sick or otherwise; he must never drink any intoxicating liquors; he must not associate with other prisoners on parole, or persons having a criminal record; he must visit no improper places of amusement; must not have or own weapons; must not own, drive or ride in an automobile for pleasure; and is not even permitted to marry, or be out after nine o'clock P.M. without the consent of the Illinois authorities. And any violation of such terms renders him subject to reimprisonment in the Illinois penitentiary.

The People take the impossible position that the prisoner is on parole when he is delivered to another penitentiary, and that he has violated his parole when he is placed in contact with prisoners and persons, which, within itself, constitutes a violation, rendering every moment of his stay in the Arizona penitentiary a ground for his recall to Illinois to further serve in the penitentiary. Such a contract is so inequitable, unjust and impossible as to not merit the name of an agreement, especially when the one party to it is under the duress of imprisonment, where he is placed at the option of staying in one prison or going to another. It is very probable that because of the prevalence of these banishment paroles the General Assembly, in 1943, adopted the more reasonable and humane practice of having a minimum and maximum term of imprisonment fixed by the court, which sentences the prisoner, rather than having an administration of the parole law in a manner similar to the facts as disclosed in this case.

Having expressed our opinion of the claim that the parole contract executed by the prisoner is justification, in and by itself, for his detention, we pass now to the real merits of the case. Petitioner claims that the State of Illi-

nois released all control, and waived the rights of further custody when they permitted him to be taken by the prison authorities to the State of Arizona to there serve for a crime committed in that State. Apparently, he relies upon the case of *People ex rel. Barrett* v. *Bartley,* 383 Ill. 437, where we held the Governor of Illinois honored a requisition by the State of Wisconsin for the removal of an Illinois prisoner, and that by so acting the Governor waived all further jurisdiction over the prisoner, and barred parole authorities from again claiming the right to return the prisoner to Illinois as a parole violator. It is to be noted that in that instance the act waiving jurisdiction was performed by the Governor of Illinois, who has the power of pardoning or commuting sentences of persons incarcerated in the penitentiary. There is no contention in the present case that the Governor surrendered the person of the petitioner to the authorities from Arizona upon a requisition from that State.

In the later case of *People ex rel. Milburn* v. *Nierstheimer,* 401 Ill. 465, a prisoner in the Menard penitentiary was turned over to the United States authorities, and at the time of his delivery he signed a parole agreement, in which he recited that he was temporarily and conditionally turned over to the United States marshal, and apparently placed upon probation by the Federal authorities. Later he was convicted of crime and sentenced to the Illinois State Farm, and upon discovery of this was declared to be a parole violator. In that case we called attention to the fact that, in order to constitute petitioner's delivery to the Federal authorities a waiver of jurisdiction over him, and thus in effect a pardon or commutation of his sentence, it is necessary that the delivery be made pursuant to the direction of the Governor, and that, since no showing was made that the Governor had authorized his release, the contention of waiver of jurisdiction could not be sustained. The same situation exists here. There was never any

waiver of jurisdiction caused by the Governor of the State of Illinois signing an extradition warrant, or commuting or ending petitioner's sentence, and hence the question of waiver is not in the case.

In this same case of *People ex rel. Milburn* v. *Nierstheimer,* 401 Ill. 465, we criticized the practice of taking a prisoner from the Illinois penitentiary and turning him over to other authorities, because it is not a compliance with the statute with reference to paroles, which provides that there must be satisfactory arrangements made for the parolee's honorable and useful employment while on parole. Nobody could possibly contend that delivering a man to serve a sentence in another penitentiary was giving him useful and honorable employment to comply with the parole law, and hence we must hold, as was held in this last case, that it was no parole at all, since there was no compliance with the provisions of the Illinois Parole Act, and this being the case, under the *Milburn case,* the petitioner was subject to be apprehended at any time, and returned to the penitentiary, because under numerous authorities he is liable to serve the full maximum term of life, subject to being released or discharged under the provisions of the Parole Act. *People ex rel. Neville* v. *Ragen,* 396 Ill. 565; *People* v. *Tyson,* 393 Ill. 108; *People* v. *Wilson,* 391 Ill. 463.

While it is true that the parole contract was invalid, and in fact no compliance with the Illinois Parole Act, nevertheless the signing of the same by the petitioner discloses he did not object to leaving Illinois, and, even after he was discharged from the Arizona penitentiary, was convicted and sentenced to serve a long term of imprisonment in a California penitentiary. In *People ex rel. Ross* v. *Becker,* 382 Ill. 404, we held that one is a fugitive from justice, within the contemplation of the constitutional provision, who has been charged with a crime in the demanding State, and leaves the State for any purpose whatsoever. And in *People ex rel. Barrett* v. *Dixon,* 387 Ill. 420, we not only

followed the *Becker case,* but we held that even if the inquiry as to the lawfulness of the extradition was material and open in a *habeas corpus* proceeding, it is not a cause for exemption from reincarceration as a parole violator that he might have been unlawfully brought within the jurisdiction of the court.

While the facts here disclose a harsh administration of the criminal law, we are compelled to concede that the petitioner himself is mostly responsible for them. The fact that the parole contract by which he was delivered to the Arizona penitentiary was invalid, and not in compliance with the law, does not excuse him from serving the full sentence received, after it appears he has persistently violated the law, and been convicted of felonies in other States.

Since the prisoner owes to the State of Illinois the balance of his sentence of life imprisonment until he is discharged by the prison authorities, or pardoned by the Governor, he is not entitled to discharge by the writ of *habeas corpus.*

*Prisoner remanded.*