DOMINGO EMANUELLI FONTÁNEZ, Petitioner, *v.* DISTRICT COURT OF PUERTO RICO, PONCE SECTION, today SUPERIOR COURT, PONCE PART, Respondent; THE PEOPLE OF PUERTO RICO, Intervener. THE PEOPLE OF PUERTO RICO, Petitioner, *v.* THE SAME, Respondent; DOMINGO EMANUELLI FONTÁNEZ, Intervener.

Nos. 1920 and 1921. Argued April 1, 1952.—Decided April 13, 1953.

Luis Blanco Lugo for petitioner. Víctor Gutiérrez Franqui, Attorney General, and Omar Cancio Sifre, Assistant Attorney General, for the People.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

On November 12, 1946, Domingo Emanuelli Fontánez was sentenced to serve an indeterminate sentence of from 12 to 24 years in the penitentiary for the offense of murder in the second degree committed on November 23, 1945.[1] On that same date he was also sentenced to serve a term of four months in jail for the offense of carrying weapons, incidental to the offense of murder.

On December 21, 1950, the Parole Board released Emanuelli on parole, and on the 28th of that same month and year and when he had served 5 years, 2 months and 5 days of the sentenced imposed on him for the offense of murder (3 years, 1 month and 11 days imprisonment, plus 2 years

---

[1] Said judgment was affirmed by this Supreme Court on July 22, 1947. People v. Emmanuelli, 67 P.R.R. 626.

and 24 days for good conduct), it discharged him issuing the corresponding parole certificate.[2]

On March 20, 1951 the People of Puerto Rico appeared before the District Court of Puerto Rico, Ponce Section, and requested said Court that, inasmuch as Emanuelli was not serving the sentences imposed on him, it should order his arrest and confinement in the Insular Penitentiary, on the ground that the action of the Parole Board in granting the privilege of release on parole "is null and void because it had acted without jurisdiction and in excess of the powers granted to it by law, since the provisions of the Indeterminate Sentence Act are applicable to persons who at the time of the effectiveness of said Act were confined in any penal institution of Puerto Rico, as is the case at bar (Act No. 295 of April 10, 1946, Sess. Laws, p. 758, as amended by Act No. 176 of May 4, 1949, Sess. Laws, p. 552, especially § 3 of this Act)," [3] and because Emanuelli had failed to serve "the minimum term required by the law in order that a person may be considered eligible to receive the privilege

---

[2] The aforesaid order states:

"Being it satisfactorily shown that DOMINGO EMANUELLI FONTÁNEZ sentenced by the District Court of Ponce, P. R., to serve a term of from 12 to 24 years imprisonment in the penitentiary and 4 months in jail for Murder in the Second Degree and for Carrying Weapons, and who has been confined in the Insular Penitentiary since November 17, 1947, *meets all the necessary requirements for eligibility to enjoy the privilege of release on parole*, the Parole Board, in the exercise of its power granted by Act No. 266, approved on April 3, 1946, orders that said Domingo Emanuelli Fontánez be released on parole until the expiration of the rest of the term that he still has to serve, as long as his conduct, while enjoying the privilege granted herein, so justifies it." (Italics ours.)

It was further stated, that Emanuelli would continue "on parole until February 23, 1970."

[3] On January 4, 1951, the then Attorney General of Puerto Rico wrote a letter to the Board, and on the 10th of that same month submitted a memorandum contending that inasmuch as Emanuelli had been released on parole when he had not yet served 6 years (one-fourth part) of the term of his sentence, it was proper to reconsider the agreement granting him release on parole, to cancel the certificate issued, to confine him in the Penitentiary and to wait until he served one-fourth of his sentence, in order to reconsider his case and decide again on his release on parole.

of parole, because it is an essential requirement and of a jurisdictional nature [the fact that], prior to his release, the convict should have served the minimum of his indeterminate sentence." [4]

In opposition to this petition, Emanuelli contended: (1) That the court lacked jurisdiction to entertain the motion presented by the People of Puerto Rico and that said court could not review the action of the Parole Board, (2) that the action of the Board was valid and effective in law and complied with the prevailing statutory requirements; (3) that the application to Emanuelli of the Indeterminate Sentences Act, insofar as it affected the term which the Board had for considering his case, was unconstitutional and void.[5] On the other hand the Parole Board urged—on the grounds which it had set forth in its decision of March 1, 1951 [6] denying the reconsideration sought by the Attorney General of the order of the Board granting conditional release to Emanuelli—that in granting said release, it had acted with full jurisdiction and power.

The respondent court held: (1) that it had jurisdiction to entertain the motion of the People of Puerto Rico; (2) that the application of Act No. 295, of April 10, 1946, to Emanuelli, would only make the punishment more onerous as to his right to invoke the privilege of release on parole within a shorter term than the minimum term fixed in the indeterminate sentence imposed, it being, therefore, *ex post facto* in its application to Emanuelli; (3) that by the construction of Act No. 266 of April 4, 1946 (Sess. Laws, p. 550) together with the afore-mentioned Act No. 295, Emanuelli

---

[4] The People also held in said motion that the action of the Board in setting Emanuelli free was null and void inasmuch as he still had to serve the sentence of 4 months in jail for carrying weapons.

[5] We have summarized the position of the petitioner Emanuelli before the respondent court insofar as it corresponds with the position which he essentially assumes before this Court, in the proceeding in which he is the petitioner as well as in the proceeding in which he is intervener.

[6] We shall refer to said grounds in the course of our opinion.

was bound to serve one-fourth of the indeterminate sentence imposed before he could become eligible for release on parole; (4) that the Board had authority to grant Emanuelli parole as to the sentence of 4 months in jail. Consequently, it ordered his arrest and confinement in the Penitentiary until he served one-fourth of the maximum of the indeterminate sentence of 12 to 24 years imposed on him for the offense of murder in the second degree.

Emanuelli as well as the People of Puerto Rico appealed to this Court, each with a petition that a writ of certiorari be issued directing the trial court to review the decision ordering Emanuelli's confinement in the penitentiary. Due to the importance of the questions involved we issued the writs of certiorari which were consolidated so that they be prosecuted and argued together.

Emanuelli contends in his petition that the trial court erred in holding that it had jurisdiction and power to review the actions of the Parole Board, and (2) in holding that he had to serve one-fourth of his sentence for the offense of murder before the Board could consider his case. The People, on the other hand, maintains that the court a quo erred in holding that Act No. 295 of April 10, 1946, was ex post facto in its application to Emanuelli.

I

## The Question of Jurisdiction

██ Emanuelli's position in arguing the assignment of lack of jurisdiction may be summarized as follows: The motion of the People to order his arrest and confinement involves the review of an agreement of the Parole Board. The Act creating the Board does not expressly provide that its agreements and decisions may be judicially reviewed. Apparently, the reason is that the Board exercises the power of executive grace acknowledged as an exception to the rule of separation of powers. Silence of the law regarding judi-

cial review of the actions of the Board, excludes said review, except upon inquiry into (1) the legal capacity of the executive officer for granting *the pardon* and (2) the validity of a *pardon* obtained by fraudulent representations. Neither of these exceptions is involved herein. Besides, the trial court is barred from ordering his confinement in the exercise of its power to enforce the sentences it imposes, because Emanuelli, while on parole, is serving his sentence, and hence the essential requirement for invoking said power is lacking, to wit, failure to serve the sentence.

Emanuelli is not correct. Although it is true that a convict who is paroled, is serving his sentence while enjoying his liberty, *United States ex rel. Rowe* v. *Nicholson*, 78 F. 2d 468 (C. A. Va. 1935), certiorari denied in 80 L. Ed. 405; *United States ex rel. Nicholson* v. *Dillard*, 102 F. 2d 94 (C. A. Va. 1939; *United States ex rel. Gutterson* v. *Thompson*, 47 F. Supp. 150 (D. C. N. Y. 1942), affirmed in 35 F. 2d 626, cert. denied in 320 U. S. 755, 88 L. Ed. 450; *Anderson* v. *Williams*, 279 Fed. 822 (C. A. Kan. 1922), reversed on other grounds in 263 U. S. 193, 68 L. Ed. 247, it is likewise true that in order to release on parole, the Board can not act outside the statutory powers to it granted, or in violation of an express provision of law, *Lewis* v. *Carter*, 220 N. Y. 8, 115 N. E. 19 (C. A. N. Y. 1917), but if it does so, its action is null and void at law and does not grant a legal status for the valid enjoyment of the parole, being the legal status of the parolee on the same plane as an escapee.[7] *People ex rel. Miller* v. *Niehrstheimer*, 85 N. E. 2d 10 (Ill. 1949). See also *De Jesús* v. *Ramírez, Warden*, 72 P.R.R. 281. *Cf. Taylor* v. *Squirer*, 142 F. 2d 737 (C. A. Wash. 1944), cert. denied in 323 U. S. 755, 89 L. Ed. 604; *United States ex rel. Nicholson* v. *Dillard, supra*, and 141 A.L.R. 1225.

---

[7] In this case, after the respondent court issued an order for the incarceration of Emanuelli, a bond was fixed by this Court to stay said order.

██ When the Board grants, *in the valid exercise* of its legal faculties, release on parole, it is not exercising the executive power of mercy which is reserved to the Governor.[8] This power of the Governor is not equal to, nor is it impaired by, the exercise of the power to grant release on parole. The former flows from the fundamental state law and is exclusive; it is a mere act of mercy which can not be regulated by the legislative branch nor can the latter interfere with it. The second flows from the legislative power and it is generally delegated to an administrative Board to exercise it at its own discretion, within the standards established by the legislative power. Pardon blots out the very existence of his guilt so that in the eyes of the law he is thereafter as innocent as if he had never committed the offense. A parole does not obliterate the crime, and is more than a matter of legislative grace: it is primarily a penological measure for the disciplinary treatment of prisoners and their rehabilitation. *Com. ex rel. Banks* v. *Cain,* 28 A. 2d 897, 143 A.L.R. 1473, 1486 (Pa. 1942); *In re Court of Pardons,* 129 Atl. 624 (1925 N. J.). See also 65 Harv. L. Rev. 309.

 Silence of the law regarding judicial review of the actions of the Parole Board has no bearing upon the case at bar in which it is not sought to review the Board's discretion, validly exercised under the authority granted to it by law, but rather to challenge its authority to interfere in the case, because it had none at law. Said silence regarding

---

[8] Section 12 of the former Organic Act of Puerto Rico, in enumerating the powers of the Governor, provided among others, that: "He may grant pardons and reprieves and remit fines and forfeitures for offenses against the Laws of Porto Rico . . ."

Section 4 of Article IV of the Constitution of the Commonwealth of Puerto Rico provides insofar as pertinent the following:

" . . . . . . .

"He shall have the power to suspend the execution of sentences in criminal cases and to grant pardons, commutations of punishment, and total or partial remissions of fines and forfeitures for crimes committed in violation of the laws of Puerto Rico."

judicial review, does not have, therefore, any significance, inasmuch as parole being a matter of grace and not a legal right which may be judicially claimed, *Hiatt* v. *Compagna*, 178 F. 2d 42 (C. A. Ga. 1949), the grant or denial of parole does not implicate questions of due process of law. It is not, therefore, strange that contrary to what occurs in statutes concerning other matters,[9] statutes on parole do not provide for judicial review of the conduct of the Board.

■ An action of the Board in granting parole without authority has no legal effect, and it may, at any time, either by habeas corpus, if the prisoner should intend to assert his rights under said action, or—as in this case—by a petition for an order of incarceration if he had been discharged by virtue thereof, be judicially attacked, regardless of the absence of provisions for judicial review. *White* v. *Parole Board*, 86 A. 2d 422 (N. J. 1952); *Ditchick* v. *State Board of Parole*, 46 N. Y. Supp. 514; see also *People* v. *New York State Parole Board*, 39 N. Y. Supp. 2d 200. *Cf. Commonwealth* v. *Harradine*, 25 A. 2d 576. And although connected with the exercise of the pardoning power of the Governor, see Annotations in 65 A.L.R. 1471 and 30 A.L.R. 238.

■ Consequently, the trial court had jurisdiction to entertain the motion of the People and to investigate, under its allegations, whether the Board had acted without authority and in violation of the law in granting Emanuelli release on parole—thus interrupting the service of the sentences imposed on him—and if such was the case, to order his incarceration to terminate his sentence, § 329, Code of Criminal Procedure, in the legitimate use of the immanent power of the courts to compel execution of their sentences.

---

[9] See, however, *Rivera* v. *Chancellor of the University*, 73 P.R.R. 361 and *Estep* v. *United States*, 327 U. S. 114, 146, 90 L. Ed. 567, for cases in which the right of judicial review has been acknowledged even when the statute does not provide therefor.

## II

### *The Ex Post Facto Nature of the Act Establishing the Indeterminate Sentence*

The scope of the constitutional prohibition regarding the approval of *ex post facto* laws directed to the Congress—Article I, § 9, Clause 2—and directed to the states —Article I, § 10, Clause 1—of the Constitution of the United States, and which, with the same scope appeared in paragraph 8 of Article 2 of our former Organic Act—48 USCA, § 733—and appears now in the Constitution of the Commonwealth of Puerto Rico—Article II, § 12, 2d paragraph— was originally established in the year 1798 by the National Supreme Court in *Calder* v. *Bull*, 3 Dall 386, 1 L. Ed. 648, in an opinion delivered by Justice Chase, wherein he stated that he considered *ex post facto* the following laws and those similar thereto: "1st. Every law that makes an action done before the passing of the law; and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender. . . . But I do not consider any law *ex post facto*, within the prohibition, that mollifies the rigor of the criminal law; but only those that create, or aggravate, the crime; or increase the punishment, or change the rules of evidence, for the purpose of conviction." *Fernández* v. *Rivera, Warden*, 70 P.R.R. 859.

The former concept on the afore-cited constitutional prohibition was enhanced for the first time by Judge Washington in the following charge to the jury in *United States* v. *Hall*, 26 Fed. Cas. 84 (1809), affirmed in 6 Cranch 171, 3 L. Ed. 189: "An *ex post facto* law is one which, in its

operation, makes that criminal or penal, which was not so at the time when the action was performed; or which increases the punishment; or which *in relation to the offence or its consequences, alters the situation of a party,* to his disadvantage." See *Ex Post Facto Laws in the Supreme Court of the United States,* 15 Calif. L. Rev. 269 and 28 *Journal of Criminal Law and Criminology,* 915.

This concept was likewise set forth by the National Supreme Court in *Kring* v. *Missouri,* 107 U. S. 221, 27 L. Ed. 506; *Ex parte Medley,* 134 U. S. 160, 33 L. Ed. 835 and *Thompson* v. *Utah,* 170 U. S. 343, 42 L. Ed. 1061, and later reaffirmed in *Lindsey* v. *Washington,* 301 U. S. 397, 81 L. Ed. 1182, having been stated in this last case that: ". . . the *ex post facto* clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed," and that "an increase in the possible penalty is *ex post facto.*" [10]

Let us examine now, in the light of the former principles, the problem of whether Act No. 295 on Indeterminate Sentences, is *ex post facto* in its application to Emanuelli, inasmuch as at the time the offense was committed § § 27 and 28 of the Penal Code required trial courts to impose a *determinate* or fixed sentence, within such limits as prescribed for the offense of murder in the second degree, —of 10 to 30 years in the penitentiary, § 202, Penal Code—and not an indeterminate sentence, as was imposed on him.

Emanuelli contended in the court *a quo* that Act No. 295 was *ex post facto* inasmuch as it aggrieved him, since under the indeterminate sentence of from 12 to 24 years imposed on him, a longer term had to elapse [11] in order to be eligible for parole. In this respect the People contends on its part

---

[10] See *Malloy* v. *South Carolina,* 237 U. S. 180, 59 L. Ed. 905; *Cummings* v. *Missouri,* 4 Wall 277, 326, 18 L. Ed. 364; *Calder* v. *Bull,* 3 Dall 386, 1 L. Ed. 648; 1 Alexander, *The Law of Arrest,* § 15, p. 143.

[11] At the time Emanuelli committed the offense for which he was convicted—November 23, 1945—in order that the then Advisory Parole and

that parole being a grace or privilege and not a right of substantive nature, and it not being either a matter of penal nature, which is the only instance when the *ex post facto* clause applies, it is not a matter within the purview of said clause, adding that the latter can not be invoked herein either because this is not the case of an. *accused* person but of one serving sentence.

We do not have to consider the nature of Act No. 295 from the point of view discussed by the parties, that is whether or not it is *ex post facto* because it prejudices Emanuelli since it makes his situation more onerous, *in order to obtain his release on parole.* There is one former and superior circumstance which makes it *ex post facto;* which changes the standard of punishment in itself disadvantageous to defendants. *Lindsey* v. *Washington, supra.* The rule is that an Act which changes the punishment after the commission of an offense is *ex post facto if it requires any punishment* which *may be* greater *than the minimum term* which could be imposed under the former law, or if it permits a severer sentence than the maximum authorized by the former law. *Flaherty* v. *Thomas,* 12 Allen (Mass.) 428; *In re Lambrecht,* 137 Mich. 450, 100 N. W. 606; Rottschaeffer *on Constitutional Law,* pp. 767, 772.

Act No. 295, as it read at the time the judgment was rendered—as well as at present, after the amendment introduced by Act No. 176 of May 4, 1949—required the courts to fix an indeterminate sentence, without specific time limit but, "for a term which shall in no case be less than the minimum term provided by law for the offense committed nor more than the maximum term indicated for said offense," and that in those cases in which the law did not establish

Pardon Board could recommend parole it was necessary that the convict serve one-fourth of the sentence imposed on him. Act No. 180, approved on March 15, 1943. Act No. 295 on Indeterminate Sentences requires that the convict serve "the minimum term fixed by the trial court" before the Parole Board can assume jurisdiction and parole him.

such terms, the court do so. To show that a more onerous punishment may be imposed under Act No. 295 than before its enactment, it is enough to say that formerly, Emanuelli could have been sentenced to a fixed term of 10 years, which in that case would have been minimum as well as *maximum*. Under Act No. 295 that sentence of 10 years would only be *minimum*, the court being bound to impose anyway a maximum term, which would always be longer than the fixed term of 10 years which might have been imposed on him. Act No. 295 requires, therefore, the imposition of a punishment which results *always* greater than the minimum which could have been imposed before its enactment, which because of its condition of a fixed term was also the maximum punishment. Evidently in said case the standard of punishment was modified to the detriment of the defendant. Any sentence fully served, under the example stated above, would require a longer term in prison than any term to be served under the minimum sentence that could have been imposed prior to the approval of Act No. 295, this being sufficient to pierce the *ex post facto* clause. *Lindsey* v. *Washington, supra.*

But there is still more. Prior to the approval of Act No. 295 a person sentenced to a fixed term of 10 years in the penitentiary who behaved well, could totally serve his sentence after having served six years, eight months in prison. Nowadays, after that term is served he would only be eligible for parole, inasmuch as if the minimum is 10 years, the maximum would necessarily be longer no matter how short it might be, and even if paroled on that same day, the defendant would be subject to the conditions which said liberty entail, which would affect him adversely, for besides his liberty being technically restricted, *Application of Nasti,* 9 N. Y. Supp. 2d 327 (1939), there would always be the danger of a reversal and consequently reconfinement. Under the standards established in *Lindsey* v. *Washington, supra,* we hold that Act No. 295 establishing indeterminate sentences is *ex post facto* as applied to persons convicted of

offenses prior to its enactment. See also *Ex parte Lee*, 171 Pac. 958 (Cal. 1918); *Ex parte Fritz*, 177 Pac. 157 (Cal. 1918); *Ex parte McCready*, 177 Pac. 459 (Cal. 1918); 2 Sutherland, *Statutory Construction*, § § 2309, 2310, pp. 171 *et seq*. The ruling to the contrary in *Vázquez v. Rivera*, 70 P.R.R. 203, is overruled.

The indeterminate sentence of from 12 to 24 years in the penitentiary imposed on Emanuelli as the result of an *ex post facto* law, is therefore, void. *Vázquez v. Rivera*, *supra*. As to this particular, the respondent court reached the correct conclusion, although on grounds which we have not considered here. However, once said court concluded that Act No. 295 was *ex post facto* in its application to Emanuelli it had no basis to issue an order of confinement in order that said accused should continue serving his sentence of from 12 to 24 years which had been imposed on him and which, as we have seen—and as held by said court—was void. The theory that an indeterminate sentence is for the maximum term of the punishment imposed, *People ex rel Neville v. Ragen*, 72 N. E. 2d 175; *Ex parte Lee, supra*, does not make valid an indeterminate sentence which is void. Consequently, it was the duty of the respondent court to render a fixed-term sentence—the one which should have been originally imposed. *Ex parte McCready, supra; People v. Scott*, 39 Cal. App. 128, 178 Pac. 298. Having failed to do so, the case shall be remanded to said court for such purposes.

## III

*Effectiveness of Act No. 180 of May 15, 1943*

Emanuelli contends that since Act No. 295 was *ex post facto* for which reason the Parole Board was not bound to wait until he served the minimum term of 12 years of the sentence imposed on him, the Board was not bound either, by provision of law, to wait until he served one-fourth of the maximum term of 24 years, before acquiring jurisdic-

tion over his case and grant him parole. He bases his contention in that Act No. 266 of April 4, 1946, creating the Parole Board, expressly repealed, by its § 20, § § 5, 6 and 7 of "An Act fixing the reduction in the sentences of prisoners in penal institutions in Porto Rico and establishing a parole system" approved March 14, 1907 as well as Act No. 29 of April 13, 1940 which added § § 6a, 6b and 6c to the former. These laws created the Advisory Parole and Pardon Board and fixed its functions establishing by § 6c the requirement that the prisoner had to serve one-fourth of the sentence imposed on him in order that said Board could recommend to the Governor the granting of his parole. Act No. 266, however, did not expressly repeal, by its § 20, Act No. 180 of May 15, 1943, which besides amending § 1 of the Act of 1907 also amended § 6c which had been added to said law by Act No. 29 of April 13, 1940.

The Parole Board in its decision of March 1, 1951 dismissing the reconsideration requested by the then Attorney General on January 4 of that same year decided that Act No. 180 "was repealed because it amended a repealed law, Act No. 29 of [April 13] 1940," and that by virtue thereof, "The only limit to the broad power granted by said Act [Act No. 266, of its creation] to the present Parole Board is the one contained in Act No. 295 of 1946 establishing the Indeterminate Sentence." As a result of said point of view the Board in the next breath stated in its decision:

"Based on these provisions the present penal population is divided into two big groups:

"a. Prisoners who are serving an indeterminate sentence in which cases, the board does not acquire jurisdiction until the minimum of said sentences is served and

"b. Prisoners who because they have been convicted and sentenced prior to the effectiveness of the Indeterminate Sentence Act are not affected, as those of the first group, by any specific term, since the provisions of Act No. 266 apply to the second group."

The provisions of Act No. 266 to which the Board refers are those included in § 6 which authorizes it to "order the parole of any person confined in any penal institution of Puerto Rico, according to the provisions of this Act," only "when attendant circumstances justify the board in believing with reasonable certainty that such measure will achieve the moral and economic rehabilitation of the delinquent," and which provides that "No prisoner may be released on parole who has not been confined for such term as, in the judgment of the board, may be necessary in order to start in him the favorable moral change which is indispensable for the attainment of his full moral rehabilitation through his conditional release, under the constructive supervision of the board." Its position is, in connection with those prisoners validly sentenced under the Indeterminate Sentence Act, that the Board can not assume jurisdiction over them nor grant them parole until they have served the minimum term of the indeterminate sentence imposed on them; but that in connection with those sentenced to fixed terms in prison because Act No. 295 does not apply to them, then the Board may assume jurisdiction over them and grant them parole without requiring service of one-fourth of his sentence nor of any other specific term, since there is no law in force which so establishes it. Let us see.

Since Act No. 180 of May 15, 1943 was not expressly repealed—as was Act No. 29 of April 13, 1940—by Act No. 266, the only possibility to support the Board's theory is that it has been impliedly repealed.

In order to determine it, we must consider the problem in the light of the legislative intent upon approving Act No. 266. *United States* v. *Borden Co.*, 308 U. S. 188, 84 L. Ed. 181, inasmuch as the courts will not ascribe to the legislature an intent to create absurd or harsh consequences, 1 Sutherland, *Statutory Construction*, § 2007, p. 454 *et seq.* The terms of § 20 expressly repealing the Act of 1907 and Act No. 29 of 1940, are held to disclose that the legislative

intent was not to repeal Act No. 180 the existence of which it recognized, *Fay* v. *District Court of Appeal*, 200 Cal. 522, 254 Pac. 896, especially in view of the fact that Act No. 266, *ex vi termini*, does not cover the cases in which on the date of the enactment of said Act, the defendants had not served yet one-fourth of the fixed term imposed on them or had not yet been (as was Emanuelli's case) sentenced, and with the exception of Act No. 180, which was not expressly repealed, no other law could provide an adequate and germane means to the intendment of Act No. 266 to make possible the harmonious operation thereof.

Contrary to the decision of the Board, we do not believe that Act No. 180 "was repealed because it amended an Act which had already been repealed." Its provisions regarding service of one-fourth of the sentence could subsist notwithstanding the fact that Act No. 29 of 1940 had been repealed. And the truth is that such provisions are essential in order to create an integrated parole system which would not be defective, for it would not be logical to think that the Legislative Assembly in regulating the matter should establish capriciously two groups of prisoners, limiting the Board, by the terms of Act No. 295, to grant parole to those to whom said Act may apply, and leaving it unlimited in the exercise of said power—concerning the minimum term to serve sentence—to grant it freely to those to whom its provisions do not apply.

Section 9 of Act No. 266 provides: "The provisions of this Act shall be applicable to those persons, who, on the date this Act takes effect, *are on parole or conditionally released, or are eligible for* conditional release or parole, according to existing legislation, with the same force and effect as if this Act had been in force at the time such persons *were* paroled or conditionally released, or *were eligible* therefor, as the case may be." From a simple reading of the former provision it would seem, offhand, that said provision covers only persons who *at the time of the effectiveness* of

the Act itself, *were* already conditionally released or paroled, or that at said date *had already served* one-fourth of their fixed term sentence, by virtue of which they became eligible if they met the other requirements provided by the law in force when Act No. 266 was enacted. Under said construction, Emanuelli would be excluded from the provisions of said Act, first, because he is not subject, validly, to any indeterminate sentence whatsoever, and, second, because he was not conditionally released or on parole nor was he eligible therefor at the time said statute went into effect. This conclusion however, would not be reasonable, nor would it make real the legislative purpose of integrating an efficient, scientific and appropriate system to thus contribute to the reformation and rehabilitation of the offender. It could hardly be thought, on the one hand, that Emanuelli was excluded from the provisions of the law—as to his eligibility for parole—and on the other hand, that he did not have to serve one-fourth of his sentence before being released on parole. Both extremes would defeat the legislative purpose of an adequate integration, under reasonable standards, of the parole system, for one of them would leave a group of offenders without the protection or stimulus which would make it possible for them to return to society as useful members, and the other one would create an unjustified system of privileges, contrary to the legislative purpose contained in Act No. 295, both of which propositions would make hideous what in its operation and application is an effective and wise system for the rehabilitation of the offender.

Inasmuch as Act No. 180 of May 15, 1943 was not expressly repealed and it can not only subsist independently of the Act of 1907 and of Act No. 29 of 1940 in its provisions for the service of one-fourth of the fixed sentence imposed on one convicted of an offense committed prior to the enactment of Act No. 295—if it is read together with Act No. 266— but it actually fills a vacuum and complements the latter, insofar as it concerns a certain group of offenders, nor has

it been, as already stated, impliedly repealed, the respondent court correctly held that in order to be eligible for parole, a person sentenced to a fixed term in prison for an offense committed prior to the enactment of Act No. 295 must have served one-fourth of the sentence imposed on him. Said conclusion, however, although correct, is not valid in the case herein since the sentence imposed on Emanuelli was not for a fixed term. As we have stated previously, the sentence imposed on him is void.

Consequently, since the respondent court did not commit the errors assigned by Emanuelli in his petition for certiorari, nor by the People of Puerto Rico in its own, the writs issued should be quashed; but since the indeterminate sentence of from 12 to 24 years in the penitentiary imposed on Emanuelli for the offense of which he was convicted is void as *ex post facto*, the cases will be remanded to the court *a quo* in order that it may enter the proper judgment, with any other pertinent ruling.